UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
DONNA PICERNI, Individually and on behalf
of all others similarly situated,

                  Plaintiff,

- against -

BILINGUAL SEIT & PRESCHOOL INC.,

                  Defendant.
----------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

12 Civ. 4938 (BMC)

**COGAN**, District Judge.

Rule 41(a) of the Federal Rules of Civil Procedure gives the plaintiff or, after an answer or motion for summary judgment has been served, the parties the right to dismiss an action without the oversight or approval of the Court, subject to certain enumerated provisions of other Federal Rules, or "any applicable federal statute." The Court has raised the issue, *sua sponte*, of whether the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), is one such applicable federal statute. It concludes that it is not. Since the parties have settled the case on the basis of a Rule 68 offer of judgment, the Clerk will be directed to enter judgment accordingly.

## BACKGROUND

This case is typical of the substantial volume of cases regularly brought in this district under the FLSA. The complaint alleges that plaintiff was a teacher at defendant's private educational business. She was paid on an hourly basis under an employment contract but alleges that she was not paid for about 15 hours of each work week, and that this brought her hourly rate below the minimum wage required by the FLSA.

Plaintiff brought this action under the FLSA "as a collective action" on behalf of herself "and all others who are/were similarly situated and who file consents to opt-in to this action... ". She alleged a claim not only under the FLSA, but as is often done in these cases, she sought class action status for violations of corresponding provisions, under the Court's supplemental jurisdiction, of New York State and New York City law. These statutes, in several areas, provide for even greater protection of employee rights than the FLSA, and unlike the FLSA, they allow class actions. In addition, plaintiff sought class action status for a common law breach of contract claim.

On October 19, 2012, prior to the convening of an initial status conference in this case, and prior to defendant having answered or appeared in the case (defendant has still not appeared), plaintiff filed a notice of acceptance of an offer of judgment that defendant had made under Fed. R. Civ. P. 68. The offer of judgment provided that the case would be settled on an individual basis (not as a collective or class action) for $5000 payable to plaintiff, plus attorney's fees of $4590, "which represents 7.65 hours at $600 an hour."

The Court declined to enter judgment under Rule 68. Instead, on the same day, it entered an Order (the "October 19th Order"), providing, in part, as follows:

> Because this is an FLSA case, it cannot be resolved merely by acceptance of a Rule 68 offer. Stipulated settlements in an FLSA case must be approved by the Court in the absence of the direct supervision of the Secretary of Labor. See 29 U.S.C. § 216(c); Tuan Le v. Sita Information Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 724155, at *1 (E.D.N.Y. March 13, 2008). Even though this action was never certified as a collective action, it is still subject to Court approval. See id.; Sampaio v. Boulder Rock Creek Developers, Inc., No. 07 CV 153, 2007 WL 5209390, at *1 (E.D.N.Y. Sept. 6, 2007). Plaintiff is ORDERED to file a motion to approve the settlement by 11/2/12.

2

Plaintiff complied with the October 19th Order, and filed a motion in an effort to explain that the settlement and his attorney's fees had a reasonable basis. That motion is presently pending before the Court.

## DISCUSSION

Two venerable Supreme Court decisions make it clear that an employer who settles an FLSA claim without either Department of Labor or court approval is at risk of a subsequent suit by the same employee, even if the employer receives a release as part of the settlement agreement. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 25 S. Ct. 895 (1945), considered two consolidated cases under the FLSA. In the first, the employer, upon demand from a former employee but prior to the commencement of any litigation, paid the former employee all of the statutory overtime that he should have been paid while working, and obtained a release expressly waiving the employee's rights under the FLSA. In the second, the Wage and Hour Administration, a predecessor to the Department of Labor, obtained an injunction against an employer, requiring compliance with the FLSA. The employer, in an out of court settlement but in recognition of its obligations under the injunction, thereupon tendered $500 to a former employee. Both the employer and former employee acknowledged that this was a compromise figure to which the parties agreed to avoid litigation, and that in fact, the employee was owed more in minimum wages and overtime under the FLSA. Nevertheless, the former employee signed a release that specifically included claims under the FLSA.

In the first of the consolidated Brooklyn Savings cases, the employee sued in state court under the FLSA (the statute provides for concurrent jurisdiction) for the liquidated damages to which he was entitled under the FLSA but which the settlement had not included. The Supreme Court, on direct appeal from the New York Court of Appeals, held that because the state courts

3

had made no findings that there was a "bona fide dispute," i.e., an actual controversy as to whether the employee had actually worked enough hours to be entitled to the wages he claimed, the release was ineffective to waive his right to liquidated damages under the FLSA: " ... Congress did not intend that an employee should be allowed to waive his right to liquidated damages." Id. at 706, 65 S. Ct. at 901. The Court further noted that "[t]he same policy which forbids waiver of the statutory minimum as necessary to the free flow of commerce requires that reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes." Id. at 708, 65 S. Ct. at 902.

This conclusion, the Court held, dictated the outcome in the second constituent case of Brooklyn Savings. Since it was stipulated in that case that the both the employer and the former employee knew that he was owed more at the time he received the $500 compromise payment and signed the release, there was no "bona fide dispute" between them, and the release was ineffective.

A year later, in D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 66 S. Ct. 925 (1946), the Supreme Court held that a "bona fide dispute" does not exist when an employer claims it is not covered by the FLSA and settles a claim "under threat of suit." The Court therefore ruled that when a pre-litigation settlement occurs, and a release is given for what the parties agree is the payment in full of unpaid wages, the release is unenforceable to preclude a later suit for liquidated damages.

The application of Brooklyn Savings and Gangi in the lower courts was thoroughly discussed in Martinez v. Bohls Bearing Equipment Co., 361 F. Supp. 2d 608 (W.D. Tex. 2005), although other courts have criticized Martinez's application of those cases. See Beard v. District of Columbia Housing Authority, 584 F. Supp. 2d 139 (D.D.C. 2008); Yue Zhou v. Wang's

4

Restaurant, No. C 05-0279, 2007 WL 172308 (N.D. Cal. Jan 17, 2007); Lewis v. Giordano's Enterprises, Inc., 397 Ill. App.3d 581, 921 N.E. 2d 740 (2009). There is no reason to repeat Martinez's discussion here. But Martinez is correct in noting that the cases have split as to whether the subsequent amendment of the FLSA, at 29 U.S.C. § 253, has abrogated or at least limited Brooklyn Savings and Gangi. Most courts have at least suggested in dictum, if not held, that a private FLSA settlement will not be enforced without court approval. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982) ("other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court"). Other courts have allowed private settlements if the circumstances, when examined in subsequent litigation, are found fair, see Martinez, 361 F. Supp. 2d at 626-29 (discussing cases), or when the court finds that a plaintiff has received in settlement 100% of the wages that he should have been paid. See Mackenzie v. Kindred Hospitals East, L.L.C., 276 F. Supp. 2d 1211(M.D. Fla. 2003). All courts seem to agree that if an FLSA release is going to be upheld, it must be where there is a bona fide dispute as to the number of hours worked or computation of the employees' pay, not whether the employer is exempt from the statute based on the size or interstate presence of its business. See Sims v. Housing Authority of City of El Paso, No. EP-10-cv-109, 2011 WL 3862194, *6 (W.D. Tex. Sept. 01, 2011) ("even Martinez, which found private settlement of claims permissible, only allowed for such settlements where there was a bona fide dispute between the parties.").[1]

---

[1] There appear to be no cases that examine in any depth the issue of whether an employer's claim that the employee falls under one the exempt categories of FLSA, e.g., the administrative/managerial exemption of 29 U.S.C. § 213(a)(1), could constitute a "bona fide dispute" subject to private settlement. See Carlan v. Patriot Residential Partners, LLC, No. 11-cv-00096, 2011 WL 2357623 (M.D. Fla. May 17, 2011) (assuming without discussion that an employee exemption under the FLSA can be the basis of a bona fide dispute); Morris v. Penn Mut. Life Ins. Co., CIV. A. No. 87-7063, 1989 WL 14063, *4 (E.D. Pa. Feb. 21, 1989) ("a release of claims grounded in a bona fide

5

Curiously, however, none of the cases expressly consider the issue presented in this case, and that is presented in many others before me – settlement of a claim after the FLSA case has been commenced, i.e., a "private" settlement occurring in the context of a public lawsuit, where neither side invites, and in some cases, one or both sides actually resist, the Court's determination of whether the settlement is fair and reasonable.

When an employer chooses to resolve an FLSA claim without pending litigation, or merely "under threat of suit" as opposed to actual suit, it is obviously taking a reasoned gamble. If the employee later sues notwithstanding the release, the employer may find itself in front of a court that simply disregards the release because it was not previously approved by a court or the Department of Labor. There are at least several reasons why an employer might take this risk: (1) it may be confident that it had a bona fide dispute with the employee; that the release fairly compromises that dispute; and that it will therefore be upheld; or (2) the employer may conclude that as a practical matter, the risk of the settling employee bringing a subsequent suit is small enough in relation to the amount paid as to warrant the settlement; or (3) the employer may not want the settlement publicized among other employees who may well want the same remedial treatment, and therefore may take the risk of subsequent litigation with the settling employee to reduce the likelihood of suit by other employees. The case law cited above, for the most part, involves employers who made these kinds of judgment calls, and when the releases have been subsequently challenged, the courts have either approved them or not.

In the cases before this Court, an employer rarely makes a different analysis just because the case is pending. In other words, the factors that compel parties to settle before litigation is commenced, notwithstanding the possibility that a release that an employer receives will be

---

dispute over factual issues, not a dispute over legal issues such as the statute's coverage or applicability, is not precluded under the FLSA.").

6

ineffective, often seem to be equally compelling in reaching a settlement once the litigation is commenced. Except in the less frequent context of a settled class action under the state supplemental claims or a collective action with a substantial number of opt-in plaintiffs, I have never had an employer ask me to conduct a fairness hearing so that it has the protection of a court-approved release. To the contrary, the usual context is the one I am seeing here – no participation by the employer at all, not even an appearance. In the usual case, I merely receive advice from plaintiff's counsel that the case is over, either by a notice of voluntary dismissal under Rule 41 or a letter saying the same thing (often received the day before the scheduled initial status conference). I have then, following past practice, set the case down for a fairness hearing.

The instant case is somewhat different, but I think not materially so in terms of what steps, if any, this Court needs to take next – plaintiff has simply filed an acceptance of a Rule 68 offer of judgment. I would not even know who the attorney for the employer is but for the signature on the offer of judgment, which has been filed by plaintiff, not defendant. The employer seems quite content to have judgment entered against it, which presumably the employer will satisfy. Perhaps it views a satisfaction of judgment as more protective than a non-court-approved release, and perhaps, with at least the possibility that a judgment will have *res judicata* effect where a release might not, it is. But until some court determines that there was a bona fide dispute as to how much plaintiff was owed in wages, and that the offer of judgment fairly compromises it, the employer has not eliminated its risk.

The question is whether this should make any difference to the Court when it determines how to dispose of the case. The cases this Court cited in its October 19th Order reflect the view of my colleagues within this district, which is shared by many judges in other districts, see e.g.

7

Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227 (M.D. Fla. 2010), that the plaintiff, in a pre-answer, pre-summary judgment motion case, or the parties, after either of those events, are prohibited from discontinuing an FLSA case unless the Court has found that a bona fide dispute exists and the proposed resolution is reasonable. Indeed, that is the procedure I have followed in numerous cases prior to the instant case. Yet there is very little discussion of it; the procedure is just an assumed principle, a gloss that has come down from Brooklyn Savings and Gangi. This may be based on a presumed need to ensure that a plaintiff is receiving what he is owed, which is clearly the intent of the statute and the case law, or it may reflect what appears to be an erroneous assumption that an employer would not want to settle anyway without the protection of a court's fairness determination.

However, although I have ruled to the contrary in the past, I have come around to the view that the procedure of a court requiring approval before it permits parties to voluntarily dismiss an FLSA action is incorrect. It runs afoul of Fed. R. Civ. P. 41, which gives the plaintiff, at the early stage of the case, or the parties jointly, at a later stage in the case, free reign to discontinue for any reason. See Wolters Kluwer Financial Services, Inc. v. Scivantage, 564 F.3d 110, 114-15 (2d Cir. 2009) ("[A]s long as the plaintiff has brought himself within the requirements of Rule 41, his reasons for wanting to do so are not for us to judge.") (quoting, Thorp v. Scarne, 599 F.2d 1169, 1175 (2d Cir. 1979)).

I cannot agree with the largely unstated assumption in the cases that refuse to allow voluntary dismissals that the FLSA falls within the "applicable federal statute" exception to the Rule. Nothing in Brooklyn Savings, Gangi, or any of their reasoned progeny expressly holds that the FLSA is one of those Rule 41-exempted statutes. For it is one thing to say that a release given to an employer in a private settlement will not, under certain circumstances, be enforced in

subsequent litigation – that is the holding of Brooklyn Savings and Gangi – it is quite another to say that even if the parties want to take their chances that their settlement will not be effective, the Court will not permit them to do so.

In this regard, it is noteworthy that there is only one case that expressly considers the impact of Rule 41 on these private FLSA settlements. In Dees v. Hydradry, Inc., 706 F. Supp. 2d 1227 (M.D. Fla. 2010), the parties submitted only a joint stipulation of dismissal – and nothing more – which would of course be sufficient to dismiss an action under Rule 41 in a non-FSLA case. The Court held, however, that because the action was brought under the FLSA, Rule 41 limited the parties' ability to settle it without judicial scrutiny. "Although a private settlement and stipulation for dismissal ends the typical case without judicial intervention, the Eleventh Circuit requires the district court to review the settlement of an FLSA claim." Id. at 1231. The Court's holding was based in part on Lynn's Food Stores, Inc. v. United States, supra.

There is no perfect answer for how to treat these private settlements, which meet at the intersection of the FLSA and Rule 41. For several reasons, however, I have to disagree with the Dees decision and the assumption in other cases that FLSA claims are exempt from the parties' rights under Rule 41. I believe the parties can voluntarily dismiss an FSLA case without judicial approval – if the defendant is willing to undertake the risk of doing so.

First, the authority relied upon by the Dees court, Lynn's Food, a decision which is frequently cited in the case law, has rather atypical facts. There, the Department of Labor, after investigation, concluded that the employer had committed repeated, systematic FLSA violations. The DOL and the employer engaged in settlement discussions to no avail. The employer then made an offer to its employees of $1000 in total, to be divided among them on a *pro rata* basis, in exchange for a broadly worded FLSA release that purported to bind not only each employee

9

but the DOL, to the extent it was acting on their behalf, as well. Some of the employees spoke no English; they had no lawyer; and they were unaware that the DOL had undertaken an investigation which had found substantial FLSA violations. The employer then brought a declaratory judgment action against the DOL for a determination that it had no liability to it or the employees under the FLSA as of the result of the releases it had obtained for $1000. Faced with a rather brazen attempt to effect an end-run around the DOL, the Eleventh Circuit condemned it in broad language:

> Other than a section 216(c) payment supervised by the Department of Labor, there is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions. Since the agreements presented by Lynn's to the district court meet none of the above criteria, the district court was correct in refusing to approve the agreements.

Lynn's Food, 679 F.2d at 1355.

I believe Lynn's Food should be confined to its rather egregious facts. Not only did the employer settle on the cheap with unsophisticated employees, but it circumvented the DOL's investigation in doing so, and then had the audacity to seek a judicial imprimatur validating its aggressive strategy. A narrower reading of Lynn's Food would be that if the proposed settlement would never have been approved if presented in the context of a pending litigation, then it cannot be approved in a subsequent litigation. In contrast, had the employer paid 100% of the maximum to which the employees might have been entitled plus liquidated damages in a bona fide dispute, the broad language used by the Eleventh Circuit might well have been unnecessary. Indeed, the Eleventh Circuit has recently expressed a similar view. See Dionne v. Floormasters Enterprises, Inc., 667 F.3d 1199 (11th Cir. 2012) (if the employer tenders 100% of the unpaid wages claimed by the employee, plus liquidated damages, even while denying liability, the case

10

is moot and no fairness hearing is necessary, nor is the employee a prevailing party entitled to an attorney's fee). It is hard to conceive of any reason why, if a court is presented with an eminently reasonable, albeit after-the-fact, settlement, it is precluded from giving it legal effect. That is essentially what the Fifth Circuit held recently in upholding a private settlement, distinguishing Lynn's Food because of its one-sided facts. See Martin v. Spring Break '83 Productions, L.L.C., 688 F.3d 247, 253-256 & n.10 (5th Cir. 2012).

More importantly, Lynn's Food does not expressly address the issue of whether parties can voluntarily withdraw a case under Rule 41. It does not preclude the plaintiff or the parties from proceeding unilaterally or bilaterally, depending on the timing, from withdrawing a case and taking their, principally the employer's, chances in effectuating a settlement without court approval. It simply says, like all of the cases in this area, that the courts will not recognize an unreasonable FLSA settlement, whether the settlement is asserted by the employer as a defense in the settling employee's subsequent suit, or, as in Lynn's Food, as the basis for declaratory relief in an action that the employer has brought. Lynn's Food thus does not dispose of the issue of whether parties in a pending action can voluntarily dismiss the case without any judicial assurances if that is what they want to do.

This is not to say that there is an absence of arguably undesirable consequences in allowing private settlements of FLSA litigation without court oversight. As noted above, in the typical cases I have, like this one, where private resolutions are reached and judicial scrutiny is neither sought nor desired, the case is brought as a collective action but resolved before a collective action notice has gone out to other employees. Although one employee, the named plaintiff, has presumably benefitted to at least some extent from the private resolution, other similarly situated employees will likely not even know about it, and to the extent they have not

11

received their minimum wages or overtime, they will be no better off. Indeed, in at least one case, I have had the employer's attorney candidly tell me that the reason he wished to avoid a fairness hearing was to prevent other employees from learning of the settlement and seeking the same relief.

I am not suggesting that plaintiff in the instant case or his attorney, who is an experienced and well-regarded practitioner in this Court, have committed any impropriety. But the scenario is conducive to a dynamic that allows both a plaintiff and his employer – not to mention the plaintiff's attorney, who frequently receives a fee that greatly exceeds the plaintiff's recovery – to leverage a comparatively cheap settlement on the backs of the plaintiff's co-employees. This obviously runs contrary to the intent of Congress in enacting the FLSA and in particular to its creation of the collective action mechanism. Using the potential of a collective action as a Sword of Damocles to extract a small settlement and a large, but still comparatively small in relation to the exposure the employer would face in a true collective action, attorney's fee could not have been what Congress had in mind in authorizing collective actions.

A related problem created by a unilateral right to withdraw a case is that to some extent, it circumvents the body of case law that refuses to approve FLSA settlements that contain a confidentiality provision. See e.g. Wolinsky v. Scholastic, Inc., ___ F. Supp. 2d ___, 2012 WL 2700381 (S.D.N.Y. July 5, 2012); Mosquera v. Masada Auto Sales, Ltd., No. 09-cv-4925, 2011 WL 282327 (E.D.N.Y. Jan. 25, 2011); Ashley v. 4 Your Child, Inc., No. 6:11–CV1303–ORL–22; 2011 WL 6153196 (M.D. Fla. Dec. 9, 2011); Kianpour v. Restaurant Zone, Inc., No. DKC 11-0802, 2011 WL 3880463 (D. Md. Aug. 30, 2011) (collecting cases). But see Dillworth v. Case Farms Processing, Inc., No. 08-cv-1694, 2010 WL 776933, at *1 (N.D. Ohio 2010) (approving an FLSA agreement without commenting on it having been filed under seal). In this

12

situation, the employer does seek the approval of the Court for the settlement agreement – it wants the protection of a court's reasonableness determination in case there is a subsequent suit – but the employer also wants the settlement agreement sealed so that other employees are not tipped off that they might qualify for the same relief. Yet a private settlement of pending litigation, not approved by a court, where the docket shows nothing but a notice or stipulation of dismissal, has the potential to include such a confidentiality provision. It could be argued that once a plaintiff invokes the jurisdiction of the court by bringing an FLSA collective action, the court assumes the responsibility to see to it that its processes have not been used to the detriment of employees who have not yet received notice that the action is pending.

Despite these concerns, my conclusion remains that the FLSA is not one of the qualifying statutes that fall within the exemption from Rule 41. We start with the obvious proposition that while the FLSA expressly authorizes an individual or collective action for wage violations, it does not condition their dismissal upon court approval. The absence of such a requirement is a strong indication that Congress did not intend it, as it has expressly conditioned dismissals under other statutes upon court approval. See e.g., 8 U.S.C. § 1329 ("No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor."); 31 U.S.C. §§3730, 3731. In addition, as discussed above, neither Brooklyn Savings nor Gangi expressly preclude private settlement; they simply refuse to recognize releases in subsequent litigation where the settlement was unreasonable or not the result of a bona fide dispute.

As to the potential unseemliness of extracting a cheap private settlement and attorney's fee by using the potential of a collective action as leverage, that is not a problem that is peculiar

to the FSLA. It happens all the time under other statutes through an initial allegation of class action status which is quickly abandoned, pre-certification, in the context of an individual settlement. The vast majority of cases in this Court brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, are resolved in this manner. And while Congress has prohibited the dismissal of certified class actions without judicial scrutiny, see Fed. R. Civ. P. 23(e), it has not prohibited individual settlements prior to certification. See Kaszovitz v. Qiao Xing Universal Resources, Inc., No. 12 cv 3745, 2012 WL 3224341 (S.D.N.Y. Aug. 07, 2012). Thus, the issue we are considering is broader than the FLSA, and if it is perceived of as a problem, it is one for Congress to address.[2]

The problem of non-judicially approved confidentiality provisions in private settlements is resolved by the same allocation of employer risk as is the case with private settlements of FLSA claims generally – if a settling employee subsequently breaches the confidentiality provision, then the employer is going to have to try to enforce it, or seek rescission or damages for its violation. At that point, under the authorities cited above, the courts may well hold it unenforceable.

Refusing to allow parties to privately settle pending litigation has other practical consequences that militate against limiting the parties' dismissal rights. In most areas of the law

---

[2] In fact, Congress has considered this issue and has determined that it does not present a problem. Prior to 2003, Rule 23(e) prohibited dismissal or compromise of a "class action" without court approval. Because the Rule made no distinction between dismissals before or after certification, many courts held that court oversight was required even if the class had not yet been certified or certification sought. See e.g., In re Nazi Era Cases Against German Defendants Litig., 198 F.R.D. 429, 439 (D. N.J. 2000). The Rule was amended in 2003 to require court approval only if the case involved "a certified class." The Advisory Committee's notes explain that

> Rule 23(e)(1)(A) resolves the ambiguity in former Rule 23(e)'s reference to dismissal or compromise of "a class action." That language could be – and at times was – read to require court approval of settlements with putative class representatives that resolved only individual claims. ... The new rule requires approval only if the claims, issues or defenses of a certified class are resolved by a settlement, voluntary dismissal, or compromise.

Fed. R. Civ. P. 23 (Advisory Committee Notes to 2003 Amendments) (citation omitted).

14

where court approval of pending litigation is required, a court's refusal to grant such approval propels the parties into further negotiations to address the court's concerns. This is certainly the case in most substantial class actions settlements (and the numerosity requirement, absent in collective actions, helps to ensure sufficient substance to the action), either because the defendant wants the protection of the court's approval order, or the plaintiff's attorney wants court approval of his fee, or both. Even in a common law infant compromise proceeding, which requires court approval, see generally Local Civil Rule 83.2(a), a court's dissatisfaction with the settlement or the attorney's fee will pressure the plaintiff's attorney to try for more and for the defendant to consider whether paying any additional consideration is worth it to avoid trial; in addition, the court can always appoint a guardian *ad litem*. A similar dynamic is true in public rights actions that result in injunctive relief on consent; a court's refusal to issue a proposed consent injunction as insufficient often will have the effect of causing the parties to propose revised, more agreeable terms.

This is not the case with the vast majority of FLSA cases that come before me. They are simply too small, and the employer's finances too marginal, to have the parties take further action if the Court is not satisfied with the settlement. They almost always settle for less than $20,000 in combined recovery and attorneys' fees, and usually for far less than that; often the employee will settle for between $500 and $2000 dollars in unpaid wages.

The point was brought home to me in a recent case involving the same plaintiff's attorney as in the instant case when, after the Court had scheduled a fairness hearing upon being advised that the parties had settled (prior to the defendant's appearance in the case), neither side showed up for the hearing. I could have unleashed some of the tools that are available to compel compliance with court orders, but ultimately concluded that there was little point. If I was not

15

satisfied with the reasonableness of the settlement, I would have been faced with an individual plaintiff receiving a relatively small but satisfactory (to him) amount, a plaintiff's attorney satisfied with his proportionately larger fee, and a defendant which had a business so thin that it could not have an attorney file a notice of appearance or show up at a hearing. Ratcheting up the legal process to achieve some Platonic form of the ideal of judicial vindication did not seem necessary to accomplish any purpose under the FLSA.[3]

By comparison, the decision in Zhou v. Wang's Restaurant, 2007 WL 134441 (N.D. Cal. Jan. 16, 2007), shows what can happen when a court attempts to push back the tide. The factual background is fairly similar to the bulk of the FLSA cases before this Court, although the procedural issues have to be unique. After the defendant put in a general denial and stonewalled discovery, the plaintiff Kuo, apparently under social pressure imposed by family or community members (although he denied being under such pressure, the Court found that not credible), discharged his attorney and filed a purported notice of dismissal (which was invalid under Rule 41(a) since the defendant had answered). The plaintiff then hired a new attorney who submitted

---

[3] Another practical problem of refusing to allow voluntary dismissals is whether the court can or should determine the reasonableness of the fee claimed by a plaintiff's attorney, and if it undertakes such a determination, what is the applicable standard. This is an issue that has generated a voluminous body of case law in the Eleventh Circuit, which, based on the broad reading of Lynn's Food, requires court approval of every FLSA settlement. In this case, for example, plaintiff's attorney is seeking validation of a $600/per hour rate, a rate that no reported FLSA case has allowed (although I did erroneously approve it for this plaintiff's attorney without proper reflection in an earlier case). But it is not clear that it really matters what the rate is in the context of a settlement of an individual FLSA claim. This is because the defendant is no doubt settling for the combined wage and attorney's fee claim and has no concern at all as to how the fee is allocated between the plaintiff and his counsel. Unless there is a basis to presume conflict and antagonism between the plaintiff and his attorney – i.e., that the plaintiff's attorney is receiving a larger fee at the expense of his client's wage claim, which will rarely be disclosed to the court, see Bonetti v. Embarq Management Co., 715 F.Supp.2d 1222, 1337-38 (M.D. Fla. 2009); Cisek v. National Surface Cleaning, Inc., 954 F. Supp. 110 (S.D.N.Y. 1997), then the basis upon which the attorney's fee is determined should be of no interest to the court, just as it is of no interest in most other kinds of private litigation.

In addition, as noted above, this problem is not unique to the FLSA, but occurs under any federal statute that allows the recovery of attorneys' fees. For example, this Court regularly signs Stipulations of Dismissal in actions brought under 42 U.S.C. § 1983 for police/citizen encounters. The Stipulations generally set forth the amount of the plaintiff's recovery and, separately, the amount of the plaintiff's attorney's fee award, but there is no discussion of how the parties' arrived at those respective figures, and the Court does not inquire further.

16

a stipulation signed by both sides dismissing the action. The Court construed the plaintiff's attempts at dismissal to be motions for a fairness hearing as to the settlement of the plaintiff's claims, based on the Court's view that under Brooklyn Savings, Gangi, and Lynn's Food, the plaintiff and the parties lacked the power to dismiss the case without the Court's finding that a reasonable settlement had been reached. It held evidentiary hearings on those "motions," and denied them on the ground that no settlement had been reached, and thus there was nothing to approve.[4] The Court then, acting *sua sponte*, directed the defendant to show cause why summary judgment should not be entered in favor of the plaintiff. Not satisfied with the paucity of the defendant's response to the order to show cause (notably, the attorney for the defendant had represented the new attorney for the plaintiff in an unrelated matter, and had the new plaintiff's attorney "stand in" for him on the return date of the order to show cause), the Court entered summary judgment in the plaintiff's favor based on his testimony at earlier hearings – in the amount of $1051.50. The Court noted that "[t]he present case presents an example of the kind of employer abuse of superior bargaining power that the Supreme Court decried ...". Id. at *8.

That is no doubt true. And the conduct of the defendant was no doubt outrageous (the conduct of the plaintiff's new attorney wasn't much better). The Court certainly would have been justified in referring the case to the Department of Labor, or perhaps even to the U.S. Attorney for investigation of potential criminal FLSA retaliation and obstruction charges. But it is doubtful that anything was accomplished by granting essentially an involuntary summary judgment despite a good amount of time and effort that was expended by the Court in hearings and writing decisions. All that happened was that the plaintiff received a $1051.50 piece of paper upon which he is surely not going to collect – for if he was too intimidated to proceed with

---

[4] Adding to the weirdness of the case, the plaintiff's former, discharged attorney filed a "Motion to Permit Former Counsel to Continue Litigating," which the Court denied.

the litigation (as the Court found), he would certainly be too intimidated to seize his employer's assets. Indeed, by forcing the plaintiff to proceed when he did not want to, the Court may have inadvertently increased the potential adverse social consequences to the plaintiff of having brought the suit. And there seems little doubt that the explanation for the defendant's insulting response to the order to show cause was that the defendant, and its attorney, realized that there was little the Court could do in this situation. The old adage about horses and water seems applicable to Mr. Kuo, and it generally applies to the vast majority of plaintiffs who, usually for better reasons than Mr. Kuo, determine to dismiss their FLSA lawsuits.

Finally, in concluding that the FLSA is not exempt from the right of voluntary dismissal under Rule 41, I have considered those cases holding that a fairness hearing is not required if the court determines that plaintiff is receiving 100% of the wages to which he is entitled plus liquidated damages. See e.g., Feagans v. Americana Tax Investments, Inc., No. 07-cv-433, 2008 WL 782488 (M.D. Fla. March 20, 2008) (granting motion to voluntarily dismiss based on plaintiff's representation that she was receiving full compensation, and noting that "[w]here the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required."). There is no real distinction between requiring judicial approval if the settlement is less than 100% of the claimed wages as opposed to full recovery. To determine whether a plaintiff is receiving 100%, the court will have to conduct essentially the same level of inquiry that it would conduct to determine the reasonableness of the settlement. It is not that the attorneys are dissembling, but it takes only a little hyperbole to make a proffer to the Court that based on discovery, or a re-evaluation of the plaintiff's claim as stated in the complaint, the parties are dismissing the case voluntarily on what they believe to be a full recovery basis. Some additional detail would likely be included in such a proffer, but the court is

still either going to rely on the parties' representation that the case is a bona fide dispute that has been appropriately settled, or it is going to undertake a more searching inquiry. I see little gray area between those choices.

## CONCLUSION

For the reasons set forth above, the Court VACATES its Order of October 19, 2012. The Clerk is directed to enter judgment as provided in the Notice of Acceptance with Offer of Judgment [6], and to deny the pending motions for approval of the settlement [7, 11], as moot.

**SO ORDERED.**

s/ BMC

_____
U.S.D.J.

Dated: Brooklyn, New York
February 22, 2013